1  TERESA C. CHOW, SBN 237694
tchow@bakerlaw.com
2  MATTHEW PEARSON, SBN 294302
mpearson@bakerlaw.com
3  **BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
4  Los Angeles, California  90025
Telephone:   310.820.8800
5  Facsimile:   310.820.8859

6
*[Additional Counsel Listed on Next Page]*
7
8                    **UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 ANDREW PARSONS, individually and on          CASE NO. 3:16-cv-05387-VC
   behalf of all others similarly situated,
11
                Plaintiff,
12                                              **SUPPLEMENT TO UNOPPOSED MOTION
        v.                                      FOR PRELIMINARY APPROVAL**
13
   KIMPTON HOTEL & RESTAURANT
14 GROUP, LLC,

15              Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DANIEL R. WARREN, *admitted pro hac vice*
dwarren@bakerlaw.com
THOMAS R. LUCCHESI, *admitted pro hac vice*
tlucchesi@bakerlaw.com
DAVID A. CARNEY, *admitted pro hac vice*
dcarney@bakerlaw.com
DOUGLAS L. SHIVELY, *admitted pro hac vice*
dshively@bakerlaw.com
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone:     216.620.0200
Facsimile:     216.696.0740

PAUL KARLSGODT, *admitted pro hac vice*
pkarlsgodt@bakerlaw.com
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone:     303.861.0600
Facsimile:     303.861-7805

GILBERT S. KETELTAS, *admitted pro hac vice*
gketeltas@bakerlaw.com
**BAKER & HOSTETLER LLP**
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC 20036-5304
Telephone:     202.861.1500
Facsimile:     202.861-1783

*Attorneys for Defendant*
KIMPTON HOTEL & RESTAURANT GROUP, LLC

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

**INTRODUCTION**

At the July 12, 2018 hearing on Plaintiff's motion for preliminary approval of the class settlement, and in the order on the motion, the Court requested additional information concerning the adequacy of the monetary relief included in the settlement. (*See* Doc. 97 at 1-2.) To more fully address this issue, Kimpton submits this memorandum as a supplement to Plaintiff's renewed motion for preliminary approval. As explained herein, the vast majority of putative class members have likely suffered, at most, only minimal compensable harm. The proposed settlement provides a reasonable opportunity for the overwhelming majority of class members to obtain relief that equals or exceeds the amounts they could recover if they were to prevail at trial on all elements of liability, including causation and damages, which Kimpton disputes. The settlement accomplishes this result while requiring minimal effort from class members, especially when compared to the amount of effort that would be required to recover the same relief in a contested proceeding, even if Plaintiff were ultimately successful in establishing class-wide liability.

**ARGUMENT**

**I.      The Strength or Weakness of Plaintiff's Claims Is A Significant Factor in Determining Adequacy of Settlement.**

To determine the adequacy of a proposed class settlement, "[t]he district court must balance the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016) (Chhabria, J.) (quotation omitted). Here, the weakness of Plaintiff's case — measured in terms of the putative class's low potential monetary recovery — weighs in favor of approving the settlement.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## II.     Federal Law and Payment Card Network Policies Preclude Virtually All Class Damages For Fraudulent Charges.

In cases like this one, involving the theft of payment card information, the only significant risk of monetary loss from the misuse of stolen information comes from fraudulent charges made before affected payment cards are cancelled. *See* United States Government Accountability Office, Report to Congressional Requesters: Personal Information 30 (June 2007), available at www.gao.gov/new.items/d07737.pdf (last visited August 9, 2018) (Theft of "credit or debit card information such as card numbers and expiration dates . . . put[s] affected consumers at risk of [existing] account fraud but not necessarily at risk of fraud involving unauthorized creation of new accounts – the type of identity theft generally considered to have a more harmful direct effect on consumers."). The risk of loss from potential fraudulent charges, however, is rarely borne by the cardholders.

To a large extent, federal law requires the financial institutions that issue payment cards to indemnify cardholders for fraudulent activity. *See Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 807 (7th Cir. 2018) ("Card-issuing banks and credit unions are required by federal law to indemnify their card-holding customers for losses from fraudulent activity, so our four plaintiff-appellant banks here bore the costs of reissuing cards and indemnifying the Schnucks hackers' fraud.") (citing 15 U.S.C. § 1643(a); 12 C.F.R. § 205.6).

In addition, payment card networks (such as Visa and MasterCard) require participating financial institutions to "subject themselves to specified contractual remedies," including the obligation to "indemnify their customers in the event that a data breach anywhere in the network results in unauthorized transactions." *Id*. at 808-9 ("Visa requires issuers to limit the Cardholder's liability to zero when a customer timely notifies them of unauthorized transactions. MasterCard has the same requirement.") (quotations omitted).

As a result, it is highly unusual for a putative class member to have unreimbursed fraudulent charges that are recoverable as damages or through a settlement. Occasionally, for example, a class member may have used a payment card issued by a non-US bank that is not subject to the same zero-liability rules that require most US-based issuing banks to reimburse

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    affected cardholders for fraud. The extraordinary relief provisions of the proposed settlement

2    allow class members to be compensated in such extraordinary circumstances.

3         For the vast majority of cardholders, the only types of financial losses that one could even

4    arguably suffer as a result of this incident are those that are consequential to the compromise of

5    the cards themselves, such as fees for card replacement or expenses resulting from the lack of use

6    of a particular card account for a period of time, or consequential losses arguably flowing from

7    fraud even though it was ultimately reimbursed, such as overdraft fees. However, as the

8    experience of the sole named plaintiff in this case demonstrates, discussed below, these types of

9    consequential losses, while possible, are only likely to have been experienced by a small number

10   of affected cardholders. *See also Id*. at 807-09 (financial institutions typically bear costs

11   associated with replacing compromised payment cards). Moreover, they are extremely unlikely to

12   exceed the $250 cap available for ordinary claims under the settlement.

13        The problem facing the parties, and ultimately the Court, is that there is no way of

14   knowing which particular cardholders faced these types of expenses without, at the very

15   minimum, asking each of them to provide a basic accounting of damages. Furthermore, in a

16   contested proceeding, Kimpton would have the due process right to contest a claimant's

17   subjective statements about these expenses and to cross-examine the claimant prior to a

18   determination of whether they were caused by the Kimpton incident and, if so, the appropriate

19   amount of the loss. *See, e.g., Makaeff v. Trump Univ*., *LLC*, 309 F.R.D. 631, 642 (S.D. Cal. 2015)

20   ("Ultimately, to comport with due process, the court must 'preserve' the defendant's right 'to raise

21   any individual defenses it might have at the damages phase.'") (quoting *Jimenez v. Allstate Ins.*

22   *Co*., 765 F.3d 1161, 1168 (9th Cir.2014)).

23        The other type of potential impact from a payment card incident is the time and

24   inconvenience associated with card replacement issues and with reimbursed fraud. As an initial

25   matter, case law casts doubt on whether these types of impacts are cognizable damages that

26   would support a recovery in a contested case. As one court reasoned, mere time and

27   inconvenience resulting from a data breach amounts to little more than the "ordinary frustrations

28   and inconveniences that everyone confronts in daily life." *In re Hannaford Bros. Co. Customer*

1    *Data Sec. Breach Litig*., 613 F. Supp. 2d 108, 134 (D. Me. 2009*), rev'd on other grounds*, 659

2    F.3d 151 (1st Cir. 2011). Nonetheless, the settlement provides benefits to claimants for these

3    impacts, and as a result, it arguably provides benefits to many class members who may have no

4    cognizable damages at all.

5         The proposed settlement appropriately balances all these considerations by providing

6    claimants with examples of the most common types of expenses that could reasonably flow from

7    a payment card compromise, allowing them to make a claim for those expenses with minimal

8    documentation or explanation, and providing an opportunity to seek reimbursement for larger,

9    extraordinary losses with a more stringent documentation requirement.

10   **III.    Parsons's Experience Illustrates How The Settlement Will Fairly Compensate Class**

11   **Members.**

12        There is only one named plaintiff remaining in this case, Andrew Parsons. At his

13   deposition, Parsons described the injuries for which he seeks to be compensated in this litigation.

14   According to Parsons, an unauthorized charge was attempted unsuccessfully on his credit card

15   after he used the card at a Kimpton branded hotel during the at-risk window for the malware

16   incident, resulting in the cancellation and replacement of his credit card. Parsons does not claim

17   out-of-pocket losses (such as unreimbursed fraudulent charges or replacement fees), but does

18   claim lost time and inconvenience associated with this incident, as well as lost benefits (such as

19   reward points) while waiting for his replacement credit card to arrive. While Kimpton believes it

20   could successfully challenge Parsons's claimed injuries on a number of grounds if this case were

21   to proceed, Parsons's claimed injuries would nonetheless be fully compensated under the

22   proposed settlement, with minimal documentation or a short written narrative required to

23   substantiate the claim. Moreover, Parsons's experience reflects the realities and efficiencies of the

24   payment card system in combatting and remediating fraud, in a manner that prevents significant

25   economic losses from being borne by consumers.

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4

**CONCLUSION**

Thus, in addition to the reasons given in Plaintiff's renewed motion for preliminary approval, Kimpton submits that the categories of potential monetary relief and the claim process included in the proposed class settlement are adequate.

Dated:  August 9, 2018

**BAKER & HOSTETLER LLP**

By:  _/s/ Paul Karlsgodt_____
          PAUL KARLSGODT

*Attorney for Defendant*
KIMPTON HOTEL & RESTAURANT
GROUP, LLC