JOHN A. YANCHUNIS (admitted *pro hac vice*)
MARISA GLASSMAN (admitted *pro hac vice*)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: 813.223.5505
Facsimile: 813.223.5402
Emails:    jyanchunis@ForThePeople.com
           mglassman@ForThePeople.com

*Attorney for Plaintiff*
ANDREW PARSONS and Proposed Class

TERESA C. CHOW, SBN 237694
MATTHEW PEARSON, SBN 294302
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, California, 90025-0509
Telephone:   310.820.8800
Facsimile:   310.820.8859
Emails:    tchow@bakerlaw.com
           mpearson@bakerlaw.com

*Attorneys for Defendant*
KIMPTON HOTEL & RESTAURANT GROUP, LLC

[*Additional Counsel Listed on Next Page*]

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW PARSONS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KIMPTON HOTEL & RESTAURANT GROUP, LLC<br><br>Defendant. | Case No. 3:16-cv-05387-VC<br><br>[Honorable Vince G. Chhabria]<br><br>**SETTLEMENT AGREEMENT**<br><br>Action Filed: September 20, 2016 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  DANIEL R. WARREN (admitted *pro hac vice*)
2  THOMAS R. LUCCHESI (admitted *pro hac vice*)
   DAVID A. CARNEY (admitted *pro hac vice*)
3  DOUGLAS L. SHIVELY (admitted *pro hac vice*)
   **BAKER & HOSTETLER LLP**
4  127 Public Square, Suite 2000
   Cleveland, Ohio 44114
5  Telephone:    216.620.0200
6  Facsimile:    216.696.0740
   Emails:       dwarren@bakerlaw.com
7                dcarney@bakerlaw.com
                 dshively@bakerlaw.com
8
   GILBERT S. KETELTAS (admitted *pro hac vice*)
9  **BAKER & HOSTETLER LLP**
10 1050 Connecticut Avenue, N.W., Suite 1100
   Washington, D.C. 20036
11 Telephone:    202.861.1530
   Email:        gketeltas@bakerlaw.com
12
13 *Attorneys for Defendant*
   KIMPTON HOTEL & RESTAURANT GROUP, LLC
14
15 MICHAL F. RAM, SBN #104805
   SUSAN S. BROWN, SBN #287986
16 **ROBINS KAPLAN LLP**
   2440 West El Camino Real, Suite 100
17 Mountain View, California 94040
   Telephone:    650.784.4040
18 Facsimile:    650.784.4041
   Emails:       mram@robinskaplan.com
19                sbrown@robinskaplan.com
20 *Attorney for Plaintiff*
   ANDREW PARSONS and *Proposed Class*
21
22
23
24
25
26
27
28

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of December 7, 2018, is made and entered into by and among the following Settling Parties (as defined below): (i) Andrew Parsons ("Representative Plaintiff"), individually and on behalf of the Settlement Class (as defined below), by and through John A. Yanchunis (Proposed Lead Counsel) of Morgan & Morgan Complex Litigation Group, and Marisa K. Glassman of Morgan & Morgan Complex Litigation Group, Michael Ram of Robins Kaplan, and Matt Malone of Rock Law LLP (together, "Proposed Class Counsel" or "Class Counsel"); and (ii) Kimpton Hotel & Restaurant Group, LLC ("Kimpton"), by and through its counsel of record, lead counsel Daniel R. Warren and Teresa Chow of Baker & Hostetler LLP. The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## RECITALS

*Whereas*, on July 15, 2016, Kimpton received a report of unauthorized charges occurring on payment cards after they had been used by guests at the restaurant of one of Kimpton's hotels;

*Whereas*, Kimpton immediately began to investigate the report; findings from the investigation showed that between February 16, 2016 and July 7, 2016 unauthorized malware was installed on certain servers that processed payment cards used at some Kimpton hotels and restaurants; the malware searched for track data read from the magnetic stripe of payment cards as it was being routed through the affected servers; the malware primarily found track data that contained the card number, expiration date, and internal verification code, but in some instances the malware found the track that also contains the cardholder name (hereinafter, the "Security Incident" or the "Incident");

*Whereas*, on August 31, 2016, Kimpton publicly announced the Security Incident, and in September 2016 sent notice regarding the Incident to approximately 149,100 potentially affected individuals for whom it had physical addresses;

*Whereas*, on September 20, 2016, former plaintiff Lee Walters brought this litigation over the Security Incident, asserting claims for breach of implied contract, negligence, and fraudulent, unlawful and unfair conduct under the California Unfair Competition Law;

*Whereas*, on April 13, 2017, the Court granted in part and denied in part Kimpton's motion to dismiss, dismissing Walters' alleged fraud claim but holding Walters had standing to sue Kimpton over the Incident and allowing his other claims to proceed to discovery;

*Whereas*, on August 8, 2018, without objection, plaintiffs filed a second amended complaint adding a new plaintiff, Andrew Parsons, to the case (the "Complaint");

*Whereas*, on January 4, 2018, initial plaintiff Lee Walters filed a stipulation of dismissal of his remaining claims, leaving Andrew Parsons as the sole remaining named plaintiff to the case;

*Whereas*, following extensive discovery that has taken place in this case, including third-party discovery, between April 13, 2017, and March 9, 2018, and following a mediation conducted by Bruce Friedman, Esq. of JAMS in San Francisco, California on March 12, 2018, the parties now wish to fully and finally resolve their dispute on a class-wide basis, pursuant to terms that were proposed and negotiated between them beginning in November 2017 and finalized at the mediation with Mr. Friedman on March 12;

*Whereas*, pursuant to these terms, which are set forth fully below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Kimpton and the Released Persons (as defined below) relating to the Security Incident, by and on behalf of the Representative Plaintiff and Settlement Class Members (as defined below), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against Kimpton relating to the Security Incident (collectively, the "Litigation");

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Representative Plaintiff, individually and on behalf of the Settlement Class, Class Counsel, and Kimpton that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2

prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows

## I.   DEFINITIONS.

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1   "Agreement" or "Settlement Agreement" means this agreement.

1.2   "Approved Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution process, as set forth in this Agreement.

1.3   "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator.

1.4   "Claims Administrator" means Epiq Systems, Inc., or such other company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation, as may be jointly agreed upon by the Settling Parties and approved by the Court.

1.5   "Claims Deadline" means the postmark deadline for valid claims pursuant to Section 2.1.

1.6   "Claims Referee" means Bruce A. Friedman or such other third party designated by agreement of the Settling Parties and approved by the Court to make final decisions about disputed claims for settlement benefits.

1.7   "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.8   "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.9   "Effective Date" means the first date by which all of the events and conditions specified in ¶ 10.1 herein have occurred and been met.

1.10 "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.11 "Judgment" means a judgment rendered by the Court, in the form attached hereto as Exhibit E, or a judgment substantially similar to such form.

1.12 "Notice Specialist" means Epiq Systems, Inc. or such other notice specialist with recognized expertise in class action notice generally and data security litigation specifically, as may be jointly agreed upon by the Settling Parties and approved by the Court.

1.13 "Opt-Out Date" means the date by which Settlement Class Members must mail their requests to be excluded from the Settlement Class in order for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.14 "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.15 "Personal Information" means information that is or could be used, whether on its own or in combination with other information, to identify, locate or contact a person, including without limitation names and payment card numbers.

1.16 "Plaintiff's Counsel" means Proposed Lead Class Counsel, and Class Counsel or Proposed Class Counsel.

4

1.17   "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class.  The Settling Parties' proposed form of Preliminary Approval Order is attached as Exhibit E.

1.18   "Lead Class Counsel" or "Proposed Lead Class Counsel" means John A. Yanchunis of Morgan & Morgan Complex Litigation Group.

1.19   "Class Counsel" or "Proposed Class Counsel" means John A. Yanchunis and Marisa K. Glassman of Morgan & Morgan Complex Litigation, Michael Ram of Robins Kaplan, and Matt Malone of Rock Law LLP.

1.20   "Related Entities" means Kimpton's past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, whether direct or indirect, as well as each of Kimpton's and these entities' respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads nolo contendere to any such charge.

1.21   "Released Claims" shall collectively mean any and all claims and causes of action including, without limitation, any causes of action under 18 U.S.C. § 2701 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could

5

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Security Incident and alleged theft of payment card data or other Personal Information or the allegations, facts, or circumstances described in the Litigation. Class members are only releasing claims based on the identical factual predicate. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.22 "Released Persons" means Kimpton and its Related Entities, including, as stated in ¶ 1.20, and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers.

1.23 "Representative Plaintiff" means Andrew Parsons.

1.24 "Security Incident" or "Incident" means the malware attack against Kimpton's computer systems that was publicly disclosed by Kimpton on August 31, 2016, as further described in the Recitals;

1.25 "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.26 "Settlement Class" means: All residents of the United States whose Personal Information was compromised as a result of the malware attack publicly announced by Kimpton on August 31, 2016. The Settlement Class specifically excludes: (i) Kimpton and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

1.27 "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1.28 "Settling Parties" means, collectively, Kimpton and Representative Plaintiff, individually and on behalf of the Settlement Class.

1.29 "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any of the Representative Plaintiff, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Representative Plaintiff expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Settlement Class Members, including the Representative Plaintiff, and any of them, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Representative Plaintiff expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1.30   "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

## II.   MONETARY RELIEF.

2.1   <u>Expense Reimbursement</u>. All Settlement Class Members who submit a valid claim using the Claim Form, which is attached as Exhibit A to this Settlement Agreement, are eligible to receive reimbursement for the following out-of-pocket expenses, not to exceed $250.00 per Settlement Class Member, that were incurred as a result of the Security Incident: (i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi) unreimbursed over-limit fees; (vii) long distance telephone charges; (viii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Security Incident), and text messages (if charged by the message and incurred solely as a result of the Security Incident); (ix) unreimbursed charges from banks or credit card companies; (x) postage; (xi) interest on payday loans due to card cancelation or due to over-limit situation; (xii) up to five hours of lost time spent dealing with replacement card issues or in reversing fraudulent charges or otherwise dealing with the Kimpton security incident (calculated at the rate of $25.00 per hour), but only if at least one full hour was spent; (xiii) an additional $25.00 payment for each credit or debit card on which documented fraudulent charges were incurred that were later reimbursed, to compensate the claimant for lost time associated with seeking reimbursement for the fraud; (xiv) costs of credit report(s) purchased by Settlement Class Members between February 1, 2016 and the Claims Deadline  (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Security  Incident);  and (xv) costs  of credit  monitoring  and  identity  theft protection (not to exceed $80.00) purchased by Settlement Class Members between February 1, 2016 and the Claims Deadline (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Security Incident and not for other purposes, and with proof of purchase).

Settlement Class Members seeking reimbursement under this ¶ 2.1 must complete and submit a written Claim Form to the Claims Administrator, postmarked on or before the Claims

Deadline, which shall be the 180th day after the deadline for the completion of notice to Settlement Class Members set forth in ¶ 4.2. The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. Notarization shall not be required. The Settlement Class Member must submit reasonable attestation that the out-of-pocket expenses and charges claimed were both primarily incurred because of, and plausibly arose from, the Security Incident. Failure to provide supporting attestation as requested on the Claim Form shall result in denial of a claim. Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.3.

2.2 <u>Other Extraordinary Expense Reimbursement</u>. All Settlement Class Members who submit a valid claim using the Claim Form, which is attached as Exhibit A to this Settlement Agreement, shall also be eligible to be reimbursed for monetary out-of-pocket losses that are claimed by the Settlement Class Member to have occurred more likely than not as a result of the Security Incident, in an amount not to exceed $10,000.00 per Settlement Class Member, subject to the following conditions: (a) it is an actual, documented, and unreimbursed monetary loss; (b) was more likely than not caused by the Security Incident; (c) occurred during the time period from February 1, 2016 through and including the end of the applicable claims period *(see* ¶ 2.2.2, *infra);* (d) is not already covered by one or more of the categories in ¶ 2.1, and (e) the claimant made reasonable efforts to avoid or seek reimbursement for the loss including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance as required under ¶ 2.2.1. Settlement Class Members shall also be eligible to be compensated for actual documented lost time in excess of five hours spent dealing with replacement card issues or in reversing fraudulent charges or otherwise dealing with the Kimpton security incident (calculated at the rate of $25.00 per hour), but only if this additional time can be documented with reasonable specificity not only by answering the questions on the Claim Form, but also by providing documentation in support of the claim. The total of all amounts recovered under this paragraph shall not exceed $10,000.00 per Settlement Class Member. Settlement Class Members with claims under this paragraph may also submit claims for benefits under ¶ 2.1.

9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2.2.1    Claimants seeking reimbursement for expenses or losses described in ¶ 2.2 must complete and submit the appropriate section of the Claim Form to the Claims Administrator, together with proof of such losses.

2.2.2    Claimants must exhaust all credit monitoring insurance and identity theft insurance before Kimpton is responsible for any expenses claimed pursuant to ¶ 2.2 of this Settlement Agreement.  Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source.  To be valid, claims for extraordinary expenses must be complete and submitted to the Claims Administrator on or before the Claims Deadline.  No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement.  For claims in excess of $200, the Settlement Administrator may request, and the claimant must disclose upon request, each other notice of a breach of their payment card data or other Personal Information they received in the three-year period that preceded the date of their claim hereunder; if the claimant has received no such notice, the claimant must so state.

2.3    Claims Process.

2.3.1    The parties agree to work in good faith to jointly select the Claims Referee. The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the expenses described in ¶ 2.1 or ¶ 2.2; and (3) the information submitted could lead a reasonable person to conclude, for a claim submitted under ¶ 2.1, that the alleged expenses plausibly arose from the Security Incident, and, for a claim submitted under ¶ 2.2, that the monetary out-of-pocket losses more likely than not occurred as a result of the Security Incident (collectively, "Facially Valid").  The Claims Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.,* documentation requested on the Claim Form, information regarding the claimed losses, available insurance and

the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof.

      2.3.2   Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Claims Administrator shall request additional information ("Claim Supplementation") and give the claimant 30 days to cure the defect before rejecting the claim. Requests for Claim Supplementation shall be made within thirty (30) days of receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes last. In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown (e.g., illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than one year from the Effective Date. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

      2.3.3   Following receipt of additional information requested as Claim Supplementation, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim. If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is Facially Valid, either in whole or in part, then the claim shall be paid, to the extent that the Claims Administrator finds the claim to be valid. If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Settlement Administrator may reject the claim without any further action, subject to the provisions of ¶ 2.3.2. If the claim is rejected for other reasons, then the claim shall be referred to the Claims Referee.

      2.3.4   Settlement Class Members shall have 30 days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have 15 days to reconsider its initial adjustment amount and make a final determination. If the final determination is approved by the Claims Administrator, then the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

approved amount shall be the amount to be paid. If the final determination is not approved by the Claims Administrator within 30 days, then the dispute will be submitted to the Claims Referee within an additional 10 days.

2.3.5    If any dispute is submitted to the Claims Referee, the Claims Referee may approve the Claims Administrator's determination by making a ruling within 15 days. The Claims Referee may make any other final determination of the dispute or request further supplementation of a claim within 30 days. The Claims Referee's determination shall be based on whether the Claims Referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely than not caused by the Security Incident. The Claims Referee shall have the power to approve a claim in full or in part. The Claims Referee's decision will be final and non-appealable. Any claimant referred to the Claims Referee shall reasonably cooperate with the Claims Referee, including by either providing supplemental information as requested or, alternatively, signing an authorization allowing the Claims Referee to verify the claim through third party sources, and failure to cooperate shall be grounds for denial of the claim in full. The Claims Referee shall make a final decision within 30 days of receipt of all supplemental information requested.

2.4    Aggregate Cap on Claims.  The aggregate amount of claims reimbursement under paragraphs 2.1-2.3 above for which Kimpton shall be responsible to pay is capped at $600,000.00. If the total amount of valid claims submitted under paragraphs 2.1-2.3 above exceed the $600,000.00 cap, each individual claim amount shall be reduced in a pro rata amount so that the aggregate claims reimbursement is exactly $600,000.00.

2.5    Settlement Expenses.  All costs for notice to the Settlement Class as required under ¶¶ 4.1 and 4.2, Costs of Claims Administration under ¶¶ 9.1, 9.2, and 9.3, and the costs of Dispute Resolution described in ¶ 2.3, shall be paid by Kimpton.

## III.    INJUNCTIVE RELIEF.

Kimpton agrees to adopt and implement at least the following data security measures for a period of three years following the execution of the Settlement Agreement:

3.1     Information Security Position.     Kimpton will designate a position that is specifically responsible for overseeing information security compliance at Kimpton Hotel & Restaurant Group, LLC.

3.2     Annual PCI DSS Audits & Penetration Testing.     Kimpton will hire a third-party Qualified Security Assessor to annually conduct an assessment of Kimpton's compliance with PCI DSS and hire a penetration testing company to annually conduct a penetration test of Kimpton Hotel & Restaurant Group, LLC's cardholder data environment.     Qualified Security Assessor means an independent security organization that has been qualified by the PCI Security Standards Council to assess an entity's adherence to PCI DSS.     Penetration test means a manual process that complies with the standards set forth by PCI DSS for penetration testing.

3.3     Annual Security Awareness Program.     Kimpton will provide annual security awareness training for its employees, which will include education and training regarding payment card data security and payment card data security best practices.

3.4     Payment Card Acceptance Technology.     With respect to all consumer card present payment transactions where a physical payment card is used at a Kimpton hotel front desk or restaurant, Kimpton will: (1) implement a solution that encrypts payment card data when it is read by the card acceptance device and routes the authorization message out to the payment card networks without the authorization message data being unencrypted on devices owned and managed by Kimpton ("Encryption Solution"); and (2) install card acceptance devices and payment applications that support acceptance of EMV enabled payment cards (the "EMV Solution").     Kimpton will implement the Encryption Solution and EMV Solution by June 31, 2019 for card present transactions that occur at the front desk of its hotels.     Kimpton will implement the Encryption Solution and EMV Solution for card present transactions that occur in its restaurants by January 2020.

3.5     Senior Leadership reporting.     Kimpton will report to its executive team about its cybersecurity efforts.

3.6     Requests for updates.     For a period of three years from the Effective Date of this Agreement, Class Counsel shall have the right to make an affirmative written request to Kimpton

to provide a status report on any of the injunctive relief set forth above. Class Counsel shall make no more than five such requests during this period. Kimpton agrees to provide a detailed response to the written request within sixty days of the written request.

**IV.** **ORDER OF PRELIMINARY APPROVAL AND PUBLISHING OF NOTICE OF FAIRNESS HEARING.**

4.1     As soon as practicable after the execution of the Settlement Agreement, Class Counsel and counsel for Kimpton shall jointly submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit E, or an order substantially similar to such form in both terms and cost, requesting, *inter alia:*

(a)     certification of the Settlement Class for settlement purposes only;

(b)     preliminary approval of the Settlement Agreement as set forth herein;

(c)     appointment of proposed Class Counsel as Settlement Class Counsel;

(d)     appointment of the Representative Plaintiff as Class Representative;

(e)     approval of a customary form of short notice to be emailed or mailed to Settlement Class Members (the "Short Notice") in a form substantially similar to the one attached hereto as Exhibit B, a customary long form of notice ("Long Notice") in a form substantially similar to the one attached hereto as Exhibit C, and a publication notice form ("Publication Notice") substantially similar to the one attached hereto as Exhibit D, which together shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

(f)     appointment of Epiq Systems, Inc. as Notice Specialist or such other Notice Specialist as jointly agreed to by the Settling Parties;

(g)     appointment of Epiq Systems, Inc. as Claims Administrator, or such other provider of claims administrative service, as may be jointly agreed to by the Settling Parties;

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(h) approval of a claim form substantially similar to that attached hereto as Exhibit A. *See* ¶¶ 2.1 and 2.2 above; and

(i) appointment of Bruce A. Friedman as Claims Referee, or such other Claims Referee as jointly agreed to by the Settling Parties.

The Short Notice, Long Notice, Publication Notice, and Claim Form shall be reviewed by the Notice Specialist and Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

4.2 Kimpton shall pay for providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration. Attorneys' fees, costs, and expenses of Class Counsel, and service awards to Class Representatives, shall be paid by Kimpton as set forth in paragraph 7 below. Notice shall be provided to Settlement Class Members via the physical and/or email addresses for those class members for whom Kimpton is able to provide individual notice in this manner, and by publication for all other members of the Settlement Class. Publication notice shall be provided to class members in accordance with the publication plan set forth in Exhibit F, Declaration from Epiq Systems, Inc. The notice plan shall be subject to approval by the Court as meeting constitutional due process requirements. The Claims Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement. A toll-free help line staffed with a reasonable number of live operators shall be made available to address Settlement Class Members' inquiries. The Claims Administrator also will provide copies of the forms of Short Notice, Long Notice, Publication Notice, and Claim Form approved by the Court, as well as this Settlement Agreement, upon request. Prior to the Final Fairness Hearing, Proposed Lead Class Counsel and Kimpton shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice. The Short Notice, Long Notice, Publication Notice, and Claim Form approved by the Court may be adjusted by the Notice Specialist and/or Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be

15

reasonable and necessary and not inconsistent with such approval. The Notice Program shall commence within 30 days of the Preliminary Approval Order and shall be completed within 45 days of the Preliminary Approval Order.

4.3     Proposed Lead Class Counsel and Kimpton's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

## V.     OPT-OUT PROCEDURES.

5.1     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class. To be effective, written notice must be postmarked no later than one hundred twenty (120) days after the date on which the Notice Program commences pursuant to ¶ 4.2.

5.2     All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 5.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 5.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

5.3     In the event that within 10 days after the Opt-Out Date as approved by the Court, that there have been Opt-Outs (exclusions) totaling one percent or more of the number of individuals to whom individual notice is given, Kimpton may void this Settlement Agreement by notifying Proposed Lead Class Counsel in writing. If Kimpton voids the Settlement Agreement pursuant to this paragraph, Kimpton shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Proposed Class Counsel and service award to the Representative Plaintiff, and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## VI.     OBJECTION PROCEDURES.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

6.1    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection.  Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Security Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xi) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative.  To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court no later than one hundred twenty (120) days from the date on which the Notice Program commences pursuant to ¶ 3.2, and served concurrently therewith upon Proposed  Lead Class Counsel, John A. Yanchunis, Morgan & Morgan Complex Litigation Group, 201 N. Franklin Street, 7th Floor, Tampa, FL 33602; and counsel for Kimpton, Douglas L. Shively, Baker & Hostetler LLP, 127 Public Square, Suite 2000, Cleveland, Ohio, 44114.

6.2    Except upon a showing of good cause, any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 6.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

bound by all the terms of the Settlement Agreement and by all proceedings, orders .and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 6.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

## VII. PLAINTIFF'S RELEASE.

7.1 Upon the Effective Date, each Settlement Class Member, including Representative Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims, as defined in ¶¶ 1.21 and 1.29, against all Released Persons. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Representative Plaintiff, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

## VIII. PROPOSED CLASS COUNSEL'S ATTORNEYS' FEES, COSTS, AND EXPENSES; SERVICE AWARD TO REPRESENTATIVE PLAINTIFF.

8.1 The Settling Parties did not negotiate the payment of the Representative Plaintiff's attorneys' fees, costs, expenses and/or service award to Representative Plaintiff, as provided for in ¶¶ 8.2 and 8.3, until after the substantive material terms of the settlement had been agreed upon, other than that Kimpton would pay reasonable attorneys' fees, costs, expenses, and a service award to Representative Plaintiff as may be agreed to by Kimpton and Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court. Kimpton and Proposed Class Counsel then negotiated and agreed as follows:

8.2 Class Counsel has agreed to request an amount up to $800,000.00 from the Court for their attorneys' fees, reasonable costs and expenses of all cases against Kimpton that they have pursued over the Security Incident. Kimpton agrees not to object to this request, and to pay

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the amount the Court awards to Class Counsel for their attorneys' fees, reasonable costs and expenses, up to and including $800,000.00, and no more than that amount. Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Class Counsel. The amount of attorneys' fees and expenses to be awarded shall be a matter of complete discretion of the Court upon consideration of the complete factual record before the Court at the final fairness hearing, provided that the amount does not exceed $800,000.00. SA, Ex. 1 ¶ 8.2.

8.3     Subject to Court approval, Kimpton has agreed to pay a service award in the amount of $5,000.00 to the Representative Plaintiff Andrew Parsons.

8.4     Within fifteen (15) business days after the Effective Date, Kimpton shall pay the attorneys' fees, costs, expenses, and service awards to Representative Plaintiff, as set forth above in ¶¶ 8.2 and 8.3, to an account established by Proposed Lead Class Counsel. Proposed Lead Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiff's Counsel and service award to Representative Plaintiff consistent with ¶¶ 8.2 and 8.3.

8.5     The amount(s) of any award of attorneys' fees, costs, and expenses, and the service award to Representative Plaintiff, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service award ordered by the Court to Proposed Lead Class Counsel or Representative Plaintiff shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**IX.     ADMINISTRATION OF CLAIMS.**

9.1     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶¶ 2.1 and 2.2. Proposed Class Counsel and Kimpton shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Claims Administrator's and Claims Referee's, as applicable, determination of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

19

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the validity or invalidity of any such claims shall be binding, subject to the dispute resolution process set forth in ¶ 2.3. All claims agreed to be paid in full or in part by Kimpton shall be deemed valid up to the amount paid.

9.2     Checks for approved claims shall be mailed and postmarked within 60 days of the Effective Date, or within 30 days of the date that the claim is approved, whichever is latest.

9.3     All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

9.4     No Person shall have any claim against the Claims Administrator, Claims Referee, Kimpton, Proposed Class Counsel, Plaintiff's Counsel, Kimpton's counsel, and/or the Representative Plaintiff based on distributions of benefits to Settlement Class Members.

9.5     <u>Confidentiality of Information Submitted by Settlement Class Members</u>: Information submitted by Settlement Class Members pursuant to ¶¶ 2.1 through 2.3 of this Settlement Agreement shall be deemed confidential and protected as such by Kimpton, the Claims Administrator, and the Claims Referee.

**X.     CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION.**

10.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 4.1;

(b)     Kimpton has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 5.3;

(c)     the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

(d)     the Judgment has become Final, as defined in ¶ 1.10.

20

10.2    If all of the conditions specified in ¶ 10.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 10.4 unless Proposed Class Counsel and Kimpton's counsel mutually agree in writing to proceed with the Settlement Agreement.

10.3    Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Lead Class Counsel and to Kimpton's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

10.4    In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation as if the Agreement had never been entered into and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.*  Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Kimpton shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class, Claims Administration, and Dispute Resolution pursuant to paragraph 2.4 above and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

10.5    <u>Settlement Class Certification</u>.  The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and

the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

## XI. MISCELLANEOUS PROVISIONS.

11.1     The Settling Parties (i) acknowledge that it is their intent to consummate this Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

11.2     The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

11.3     Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on

22

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

11.4 The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

11.5 The Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document. Except as otherwise provided herein, each party shall bear its own costs. This agreement supersedes all previous agreements made by the parties.

11.6 Proposed Class Counsel, on behalf of the Settlement Class, is expressly authorized by Representative Plaintiff to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

11.7 Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

11.8 The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

11.9 The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

11.10 The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

11.11  The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to choice of law principles.

11.12  As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it.''

11.13  All dollar amounts are in United States dollars (USD).

11.14  Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits.  All settlement checks shall be void 60 days after issuance and shall bear the language: "This check must be cashed within 60 days, after which time it is void."  If a check becomes void, the Settlement Class Member shall have until six months after the Effective Date to request re-issuance.  If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and Kimpton shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under paragraph 2.1 or paragraph 2.2 or any other type of monetary relief.  The same provisions shall apply to any re-issued check.  For any checks that are issued or re-issued for any reason more than 180 days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

11.15  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

SETTLEMENT AGREEMENT
Case No. 3:16-cv-05387-VC

Proposed Lead Dated: December 10           ,
2018

Representative Plaintiff's and Proposed Lead       Counsel for Kimpton and Duly Authorized
Class Counsel                                       Signatory

_____           _____

SETTLEMENT AGREEMENT
Case No. 3:16-cv-05387-VC